**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| ENCOMPASS HEALTH REHABILITATION HOSPITAL OF CHARLESTON, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> XAVIER BECERRA, *in his official capacity as Secretary, United States Department of Health and Human Services*, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

No. 2:22-cv-04171-DCN

**ORDER**

The following matter is before the court on plaintiff Encompass Health Rehabilitation Hospital of Charleston, LLC's ("Encompass Health") motion for summary judgment, ECF No. 26, and on defendant Xavier Becerra's (the "Secretary" or "Secretary Becerra") motion for summary judgment, ECF No. 29. For the reasons set forth below, the court denies Encompass Health's motion and grants Secretary Becerra's motion.

## I.   BACKGROUND

Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq., commonly known as the Medicare Act, established a system of governmentally funded health insurance for elderly and disabled persons.[1] Under the Medicare Act, certain healthcare providers are eligible for reimbursement by the Department of Health and Human Services ("HHS") for services furnished to the Medicare beneficiaries. To promote the integrity of the Medicare program, the Secretary of HHS is authorized to enter into

---

[1] The court notes that the remaining facts included in this section are drawn from the complaint unless otherwise specified, and therefore the court omits citations throughout. See ECF No. 1, Compl.

1

contracts with private entities to review claims for reimbursement submitted by providers; to determine whether Medicare payments should not be, or should not have been, made; and to recoup payments that should not have been made.  See 42 U.S.C. § 1395ddd; 42 C.F.R. § 405.371(a)(3).

There are a plethora of acronyms included within the complaint and subsequent briefs.  Therefore, the court finds that clarification of the most salient acronyms as well as summarization of the Medicare claim appeal process helpful in this court's analysis.  In so doing, the court attempts to summarize the Medicare claim appeal process that precedes the filing of a complaint in federal court before turning to the facts of the operative complaint.

There are several levels of agency review before judicial review of a Medicare denial is permitted.  First, the Centers for Medicare and Medicaid Services ("CMS"), an agency of HHS, administers the Medicare program and directs its contractors, who are responsible for the first two levels of administrative review of Medicare denials.  Second, CMS contracts with Medicare Administrative Contractors ("MACs") to process and audit claims that have been submitted by Medicare providers in a specific geographic area of the country.  MACs handle provider and supplier enrollment, as well as redeterminations, which form the first level of the Medicare claims appeal process.  Third, until 2016, Zone Program Integrity Contractors ("ZPICs") audited the payment decisions made by MACs in a process referred to as a "post-payment review," which identified both overpayments and underpayments.  In fiscal year 2016, CMS began transitioning from ZPICs to Unified Program Integrity Contractors ("UPICs"), which today perform similar duties to what ZPICs previously performed.

Fourth, CMS is mandated to enter into contracts with qualified independent contractors ("QICs") to conduct reconsiderations of redetermination decisions. The QICs are statutorily required to be independent of any MAC, ZPIC, or UPIC, as the QICs form the second level of the Medicare claims appeal process. The Office of Medicare Hearings and Appeals ("OMHA") is responsible for the third level of the Medicare claims appeal process—whereby a reconsideration decision by the QIC is reviewed by an OMHA adjudicator—and the appellant Medicare provider may request a hearing before an administrative law judge ("ALJ"). If a party is dissatisfied with the ALJ's decision, that party may appeal the decision to the Medicare Appeals Council (the "Council"), and the Council is statutorily authorized to review the ALJ's decision. The Council is located within the Departmental Appeals Board ("DAB") within HHS and provides the fourth level of administrative review. The Secretary has created various forms to assist providers in meeting the content requirements for each level of administrative appeal. Relevant here, the Secretary created Form DAB-101 for parties to use when requesting Council review of an ALJ's decision at the fourth level of appeal. See 42 C.F.R. § 405.1112(a). The fifth level of review is judicial review in a federal district court.

Encompass Health is a Medicare-certified provider of inpatient rehabilitation facility ("IRF") services. The Medicare IRF benefit is designed to provide intensive rehabilitation services to patients who require an inpatient level of therapy services furnished under the supervision of specially trained rehabilitation physicians. See 42 U.S.C. § 1395ww(j). The Medicare Act requires that all services reimbursed under the program be medically reasonable and necessary. 42 U.S.C. § 1395y(a)(1)(A). CMS has created regulations that explain when and how Medicare will consider IRF services to be

reasonable and necessary.  42 C.F.R. § 412.622 (2014–2016).[2]  The CMS coverage rules

for the IRF benefit are generally divided into two parts: (1) beneficiary eligibility criteria

and (2) technical, documentation-focused criteria.  Compare id. §§ 412.622(a)(3) with

412.622(a)(4)–(5).

Encompass Health filed a complaint for judicial review against Secretary Becerra,

in his official capacity as the Secretary of HHS.  ECF No. 1, Compl.  It alleges that the

Secretary's final decisions are not supported by substantial evidence and that the

Secretary's final decision failed to apply the correct legal standard, which the court has

the authority to review pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1395ff(b)(1)(A).

Id. ¶¶ 40–50.

According to the complaint, from approximately 2012 to present, CMS's

contractors "audited and denied 124 Medicare claims submitted by Encompass Health."

Id. ¶ 32.  The value of each claim ranges from $5,000 to more than $30,000, and the

aggregate value of the denied claims is more than $2.3 million.  Id.  Encompass Health

has been generally successful with its Medicare claim appeals and, through the ALJ level

of appeals, denials of claims valued at more than $750,000 were reversed.  Id. ¶ 33.  Of

the the claims that remained denied following ALJ review, Encompass Health appealed

twenty to the Council, which, in aggregate, are worth over $330,000.  Id. ¶ 34.  At the

time, the Council was overwhelmed by a backlog of claims appeals relative to its

adjudication capacity and, under pressure to review appeals more quickly, the Council

allegedly began "to clear its backlog by any means necessary."  Id. ¶¶ 26–31.  Beginning

---

[2] The IRF services at issue in this complaint were rendered in 2014 and 2016, and therefore the parties' dispute is based on the version of the regulations in effect during that timeframe.

in late 2022, the Council issued a series of decisions uniformly denying Encompass Health's requests for review based on purported defects in Encompass Health's filings with the Council. Id. ¶ 35. This lawsuit concerns two final agency decisions addressing acute rehabilitation services provided to two Medicare beneficiaries. The first is Council Appeal No. M-21-4833, which correlates to beneficiary C.B., and the second is Council Appeal No. M-21-4836, which correlates to beneficiary J.M.

On November 21, 2022, Encompass Health filed the complaint against Secretary Becerra. ECF No. 1, Compl. The parties filed a sealed administrative record with the court on August 15, 2023. ECF No. 25, Admin. R.[3] On September 12, 2023, Encompass Health filed a motion for summary judgment. ECF No. 26. On November 17, Secretary Becerra filed a cross motion for summary judgment, ECF No. 29, to which Encompass Health responded in opposition on December 20, 2023, ECF No. 30. This case was originally assigned to the Honorable Bruce Howe Hendricks but subsequently reassigned to the undersigned on April 26, 2024. ECF No. 32. As such, the motions are now ripe for review.

## II.  STANDARD

### A.  Judicial Review of Medicare Appeals

The standards that govern the court's review of the Council's final decision are set forth in the Medicare statute, 42 U.S.C. §§ 405(g), 1395ff(b)(1)(A), and the

---

[3] The parties cite to the specific volumes and page numbers within the administrative record without reference to the ECF filing of that record. However, that citation can be harmonized with the ECF filing in the following manner: volume 1 of the Administrative Record is available at ECF No. 25-1 and volume 2 of the Administrative Record is available at ECF No. 25-2. For consistency's sake, the court will cite to the specific volumes and page numbers of the administrative record rather than the ECF filing so that its citations parallel the parties' citations to the record.

Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 et seq.  First, the Medicare statute provides that the Council's factual findings must be upheld "if supported by substantial evidence."  42 U.S.C. §§ 405(g), 1395ff(b)(1)(A); Almy v. Sebelius, 679 F.3d 297, 301–02 (4th Cir. 2012) (citing 42 U.S.C. § 405(g)) ("With respect to factual determinations, the Medicare statute specifies that 'the findings of the [Secretary] as to any fact, if supported by substantial evidence, shall be conclusive.'").  Thus, the scope of review of the Council's factual findings under this standard is quite limited.  As the Supreme Court has explained, substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consol. Edison Co. of N.Y. v. N.L.R.B., 305 U.S. 197, 229 (1938)).  Moreover, the district court may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Council]."  Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); see Jarvis v. Berryhill, 697 F. App'x 251, 252 (4th Cir. 2017) ("The duty to resolve conflicts in the evidence rests with the [agency], not with a reviewing court.").

Second, the APA authorizes judicial review of "final agency action[s] for which there is no other adequate remedy."  5 U.S.C. § 704.  A district court must set aside an agency decision that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  Id. § 706(2)(A).  "Review under this standard is highly deferential, with a presumption in favor of finding the agency action valid."  Ohio Valley Env't Coal. v. Aracoma Coal Co., 556 F.3d 177, 192 (4th Cir. 2009)

6

To determine whether an agency action is arbitrary or capricious, the court examines whether the agency considered relevant factors and whether the decision is the result of a clear error of agency judgment.  Id. (citing Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99 (1977)).  The court's review of a final agency decision for clear error of judgment is limited to (1) asking whether the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action" and (2) determining whether there exists a "rational connection between the facts found and the choice made."  Armah-El-Aziz v. Zanotti, 2015 WL 4394576, at *6 (E.D. Va. July 16, 2015) (quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)).  "In practice, an action will not be considered arbitrary and capricious so long as 'the agency has examined the relevant data and provided an explanation of its decision that includes 'a rational connection between the facts found and the choice made.'"  Almy, 679 F.3d at 302 (quoting Ohio Valley Env't Coal., 556 F.3d at 193–93).  A court conducts such a review "based on the full administrative record" that was before the agency at the time of the decision.  Citizens to Pres. Overton Park, 401 U.S. at 416.

**B.  Summary Judgment**

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine

7

issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

### III.  DISCUSSION

This dispute concerns whether the Council, acting as an agent for the Secretary, properly reviewed two of Encompass Health's Medicare denial appeals at the fourth level of administrative review and whether the Council's decisions were supported by substantial evidence. This question is impacted, in part, by the specificity (or lack thereof) of Encompass Health's requests for review. Namely, whether Encompass Health properly specified the parts of the ALJ's decision it disagreed with and specified why it believed the ALJ's decision was incorrect for each appeal, when it wrote: "[t]he beneficiary met the criteria for admission to the IRF. The ALJ's decision did not take into account all information provided in the record. We reserve the right to file a supplemental brief pursuant to § 405.1120." Admin. R. 1 at 5; Admin. R. 2 at 5. Encompass Health did not file a supplemental brief for either appeal. Admin. R. 1 at 3 n.2; Admin. R. 2 at 3 n.1.

Encompass Health claims that the Council's decisions rests on two faulty premises—that Encompass Health (1) failed to identify the parts of the ALJ's decisions in dispute and (2) did not explain the reasons for the appeals. ECF No. 26 at 13–14. With regards to the former, it claims that it clearly identified that it disagreed with the ALJ's beneficiary eligibility determinations in each of the two appeals when it stated that "[t]he beneficiary met the criteria for admission to the IRF" in its Council appeal. Id. at 14 (first citing Admin. R. 1 at 5; and then citing Admin. R. 2 at 5). With regards to the latter, Encompass Health claims that it explained why it disagreed with the ALJs' decisions because the beneficiaries met Medicare eligibility criteria for acute rehabilitation services. Id. at 16–17. Encompass Health contends that the Council is impermissibly demanding that a party filing an appeal "is required to provide detailed factual and legal arguments in their requests for review" and "identify with specificity the parts of the administrative record that support the party's appeal" when the applicable appeal form for an appeal to the Council—Form DAB-101—provides only four lines for the party to explain its position. Id. at 17.

Encompass Health argues that it has been treated differently than similarly situated parties because, prior to the Council's backlog, previous appellants did not need to meet these stringent standards. Id. at 18. It also contends that "disparate treatment of similarly situated Medicare providers demonstrates that the decisions under review were arbitrary and capricious" because unexplained inconsistency in a federal agency's adjudications is reason to hold the agency's action arbitrary and capricious. Id. at 18–19 (citing Univ. of Tex.. M.D. Anderson Cancer Ctr. v. U.S. Dep't of Health & Hum. Servs., 985 F.3d 472, 479 (5th Cir. 2021)). Additionally, Encompass Health argues that the

Council's view of 42 C.F.R. § 405.1112(b)—pursuant to which the Secretary created Form DAB-101—is not entitled to judicial deference because the regulatory text is unambiguous.  Id. at 19–21.  Consequently, Encompass Health claims that "[a]lthough the statement '[t]he beneficiary met the criteria for admission to the IRF' may appear non-specific on its face, the precise coverage rules in question are abundantly clear with reference to the underlying ALJ decisions." Id. at 21 (first citing Admin. R. 1 at 15–16 (physician supervision); and then citing Admin. R. 2 at 21–22 (physician supervision and intensive therapy)) (second alteration in original).

In the Secretary's cross motion for summary judgment, he asks the court to grant summary judgment and find that the Council properly found that Encompass Health's request for review did not comply with 42 C.F.R. § 405.1112(b), such that the Council correctly adopted the ALJ's decisions.  ECF No. 29 at 1–2.  In pertinent part, the Secretary avers that the plain language of 42 C.F.R. § 405.1112(b) requires that an appellant explain what part of an ALJ's decision it disagrees with and why, and Encompass Health's failure to do so supports the Council's decision to adopt the ALJ's determination without further comment in both cases.  Id. at 9, 11–15.  If the court were to find that the regulation is ambiguous, the agency's reasonable interpretation is owed substantial deference.  Id. at 15–18; see also Auer v. Robbins, 519 U.S. 452 (1997); Romero v. Barr, 937 F.3d 282, 290 (4th Cir. 2019).  Moreover, Encompass Health's allegation that it has been treated differently than other similarly situated plaintiffs is without merit because it is not similarly situated to those identified plaintiffs because Encompass Health's request for review lacked the specificity of those other plaintiffs' requests for review.  ECF No. 29 at 18–20.

Finally, the Secretary argues that Encompass Health has failed to request the same relief in its motion for summary judgment that it requests in its complaint—apparently abandoning its argument that the ALJ's decisions were not supported by substantial evidence. Id. at 9–10, 20–22. Nevertheless, the Secretary wishes to clearly preserve its argument that the ALJ decisions were supported by substantial evidence. Id. at 20. For each of the beneficiary denials, the Secretary contends that there is substantial evidence in the record that supports the ALJ's conclusions that IRF services were not medically reasonable or necessary for treating either beneficiary's conditions. Id. at 20–22.

In response to the Secretary's motion, Encompass Health argues that the court should deny that motion because the Secretary's arguments merely rely on an overly technical waiver argument, "generic observations regarding the content of Encompass Health's administrative appeals" and "strained attempts to distinguish other, relevant Council decisions." ECF No. 30 at 1. First, Encompass Health claims that its motion for summary judgment follows the allegations in its complaint, which allege that the Council's decisions were unsupported by substantial evidence and that the Council applied incorrect legal standard. Id. at 2–4.

Second, Encompass Health emphasizes that nowhere in the text of 42 C.F.R. § 405.1112(b) or in the associated Federal Register commentary must the appellant identify with particularity the evidence in support of its appeals because the Council is required to review all the evidence in the administrative record to reach a decision. Id. at 4–5. In fact, Encompass Health claims that the regulation at issue, 42 C.F.R. § 405.1112(b), is primarily concerned with saving the Council from examining aspects of the ALJ's decision with which the party might not actually disagree. Id. Therefore, its

11

appeal, which identified that it disagreed with the determination of the IRF admission criteria, "teed up for the Council the particular coverage guidelines in question: the patients' need for physician oversight of their rehabilitation programs along with intensive therapy services." Id. at 5 (first citing Admin. R. 1 at 15–16; and then citing Admin. R. 2 at 21–22). Moreover, the relevant Medicare coverage requirements at issue, as well as CMS's general recommendation that adjudicators pay particular attention to only four categories of documents when reviewing IRF claims, drastically cut down on the documents the Council is and was expected to review—such that its concern regarding expenditure of limited judicial services is without merit. Id. at 6.

Third, Encompass Health argues that the agency's interpretation of § 405.1112(b) is not entitled to deference because it does not implicate the agency's substantive expertise and because it conflicts with prior agency determinations. Id. at 7–9. Fourth, Encompass Health contends that it is, in fact, similarly situated to the plaintiffs in the identified cases, such that the agency's different treatment of Encompass Health was arbitrary and capricious. Id. at 9–11.

The court first establishes the proper interpretation of the agency regulation at issue and subsequently evaluates whether the Council applied the appropriate legal standard in its review of the ALJ decisions at issue in this case, which is a legal determination pursuant to the APA. Second, the court determines whether the Council's decisions were supported by substantial evidence, which is a factual determination under substantial evidence review. The court ultimately agrees with the Secretary and grants him summary judgment. Conversely, the court denies summary judgment for Encompass Health.

12

### A. Legal Standard for Council Review

The parties disagree as to whether Encompass Health met the requirements of the regulation 42 C.F.R. § 405.1112(b) when it filed its appeal with the Council using the Form DAB-101.  Compare ECF No. 26 at 6–7, 14–16 (concluding that the Council review process is informal such that Encompass Health's two-sentence basis is sufficient to put the Council on notice of the basis for the appeal being the issue of Medicare coverage) with ECF No. 29 at 11–15 (concluding that Encompass Health failed to raise specific exceptions in its requests for review in violation of § 405.112(b)).

In each of the appeals presently before the court, Encompass Health merely stated in its Form DAB-101, "The beneficiary met the criteria for admission to the IRF.  The ALJ's decision did not take into account all information provided in the record.  We reserve the right to file a supplemental brief pursuant to § 405.1120."  Admin. R. 1 at 5; Admin. R. 2 at 5.  For each appeal to the Council, the Council noted that the appellant did not provide a supplemental brief.  Admin. R. 1 at 3 n.2; Admin. R. 2 at 3 n.1.

Thus, the court is tasked with first interpreting whether the regulation is ambiguous and, if so, interpreting that ambiguity to determine the appropriate legal standard for an appeal to the Council.  It will thereafter analyze whether Encompass Health's requests for review from the Council met the requirements of those regulations.[4]

---

[4] The court observes that it is not the only district court presently determining whether an Encompass Health entity properly preserved its request for review with the Council.  See, e.g., Encompass Health Rehab. Hosp. of Texarkana, Inc. v. Becerra, 2024 WL 1505747 (E.D. Tex. Feb. 28, 2024), report and recommendation adopted, 2024 WL 1156528 (E.D. Tex. Mar. 18, 2024) ("Encompass Health Texarkana"); Encompass Health Rehab. Hosp. of Midland Odessa, LLC v. Becerra, 2023 WL 10352173 (W.D. Tex. Nov. 21, 2023), report and recommendation adopted, 2024 WL 1023059 (W.D. Tex. Mar. 8, 2024) ("Encompass Health Midland Odessa").  The underlying dispute in each of those cases is the same as in this case—whether Encompass Health failed to properly raise any

### 1. 42 U.S.C. § 405.1112(b)

The court must first resort to all the standard tools of interpretation before it may find the identification requirement genuinely ambiguous. See Kisor v. Wilkie, 588 U.S. 558, 573 (2019). To make that effort, the court carefully considers the text, structure, history, and purpose of a regulation, in all the ways it would if it had no agency interpretation to fall back on. Id. at 575.

Congress has granted the Secretary the authority to prescribe such regulations as may be necessary to carry out the administration of the Medicare Program. See 42 U.S.C. § 1395hh(a)(1). With that context in mind, the court begins with the plain text and structure of the agency regulation at issue: 42 C.F.R. § 405.1112. In pertinent part, that regulation provides,

> (b) The request for review must identify the parts of the ALJ's or attorney adjudicator's action with which the party requesting review disagrees and explain why he or she disagrees with the ALJ's or attorney adjudicator's decision, dismissal, or other determination being appealed. For example, if the party requesting review believes that the ALJ's or attorney adjudicator's action is inconsistent with a statute, regulation, CMS Ruling, or other authority, the request for review should explain why the appellant believes the action is inconsistent with that authority.

42 C.F.R. § 405.1112(b).

The court highlights specific phrases and clauses within that regulation which are material to the instant question. First, § 405.1112 provides that "[t]he request for review

---

exceptions to the ALJ's decision in its request for Council review—though neither case resolved that question, ultimately finding it was a question appropriate for a motion for summary judgment and not for a motion to dismiss. Encompass Health Texarkana, 2024 WL 1505747, at *4; Encompass Health Midland Odessa, 2023 WL 10352173, at *3. Each Encompass Health entity filed motions for summary judgment in June 2024 which remain pending in each case. Encompass Health Texarkana, Case No. 5:22-cv-00148-RWS-JBB, ECF No. 24; Encompass Health Midland Odessa, Case No. 7:22-cv-00237-DC-RCG, ECF No. 31.

<u>must identify the parts</u> of the ALJ's . . . action <u>with which the party</u> . . . <u>disagrees</u> and

<u>explain why he or she disagrees with the ALJ's</u> . . . <u>decision</u>, dismissal, or other

determination being appealed." 42 C.F.R. § 405.1112(b) (emphasis added). The plain

text of the statute indicates that the appealing party must identify what aspect of the

ALJ's decision it disagrees with and explain its disagreement in its appeal to the Council.

<u>See</u> <u>id.</u> This interpretation is buoyed by the subsequent regulation, which states that

"[t]he Council will limit its review of an ALJ's . . . actions to those exceptions raised by

the party in the request for review." <u>Id.</u> § 405.1112(c). Therefore, Encompass Health

was required to identify the aspects of the ALJ decision with which it disagreed and why.

Nevertheless, there is some ambiguity as to what constitutes identification. In other

words, it is unclear what is sufficient to put the Council on notice as to the basis for the

appeal. The court next turns to the history and purpose of the regulation.

When CMS proposed to adopt the current version of § 405.1112(b), it explained

the reasons for the rule in the Federal Register:

> The current regulations do not require appellants to include in their requests
> for review the specific reasons that they disagree with an ALJ's decision or
> dismissal. As a result, many of the requests for review state only general
> reasons for appealing, such as "I disagree with the ALJ's decision" or "The
> decision is not supported by the evidence and is inconsistent with the law."
> Because these appeals do not identify any specific flaw in the decision, the
> [Council's] consideration of the case is very time and labor intensive,
> including examination of aspects of the decision with which the party may
> not actually disagree. For example, if an ALJ's decision rules unfavorably
> on five claims, the party may only believe that the decision is wrong with
> respect to one claim rather than all five. However, because the current
> regulations do not require the party to state the reasons for appealing all
> claims that it believes were incorrectly decided, the [Council] is obligated
> to consider whether all five claims were property decided.
>
> We believe that <u>the [Council] will not be able to conduct a de novo review</u>
> <u>of an ALJ's action within 90 days of the date the request for review is</u>
> <u>received unless parties requesting review provide more specific reasons for</u>

<u>their disagreement with the ALJ's action</u>.  Because many beneficiaries have limited experience with the rules governing Medicare coverage and payment policies, we do not propose requiring them to file specific exceptions with their requests for review unless they are represented by an attorney or other legal professional.  Providers, suppliers, and CMS (when it has entered the case as a party) however, must not only be aware of Medicare coverage and payment policies in order to support their claims, but, by regulation, are presumed to have constructive notice of CMS notices, including manual issuances, bulletins, or other written guides and directives from Medicare contractors, as well as Federal Register publications containing notice of NCDs.  <u>See</u> 42 CFR 411.406(e)(1) and (2).  Therefore, we believe it is reasonable to require providers, suppliers, and CMS, as well as third-party appellants such as Medicaid State agencies, to include in their request for review the specific reasons they disagree with an ALJ's action.  <u>In addition, we believe it is appropriate to extend this requirement to requests for review filed by attorneys or other legal professionals on behalf of a beneficiary or when a provider, supplier or third party files a request for review as the beneficiary's representative.</u>

In proposing this requirement, we wish to reassure parties that <u>the purpose of requiring the exceptions is to enable the [Council] to provide an efficient and focused review of those aspects of an ALJ's action with which the party disagrees</u>.  Because the [Council] is concerned with the content rather than the form of the appeal, we would not require parties to file formal briefs or other pleadings.  However, given the statutory limits, we believe that <u>it is reasonable to require parties to state the basis for their disagreement with an ALJ's action and for the [Council] to review de novo only those aspects of an ALJ's action with which the party disagrees</u>.  If a party other than an unrepresented beneficiary does not file any exceptions, the [Council] will adopt the ALJ's action without comment, unless the ALJ's decision or dismissal contains on its face a clear error of law.

Medicare Program: Changes to the Medicare Claims Appeal Procedures, 67 Fed. Reg. 69312, 69335–36 (Nov. 15, 2002) (to be codified at 42 C.F.R. § 405.1112(b)) (emphasis added).  This indicates that the purpose of the rule was to require parties to focus the Council on the aspects of the ALJ decision with which a party disagrees.  <u>See id.</u>  This requirement ensures that the Council can provide an efficient and focused review, ideally within a ninety-day frame.  <u>See id.</u>  The proposal also provides examples of what is <u>not</u> specific enough for review: "I disagree with the ALJ's decision" or "The decision is not

supported by the evidence and is inconsistent with the law." Id. In other words, the party appealing the ALJ decision to the Council must identify a specific flaw in that decision and explain why that part of the decision is erroneous. Id.

Upon review of the plain text, structure, history, and purpose of 42 C.F.R. § 405.1112, the court finds that the regulation is not ambiguous and clearly indicates that a party appealing to the Council that is represented by an attorney must identify a specific flaw in the ALJ decision in its appeal and explain why that conclusion is erroneous.[5]

## 2. Analysis

The court is tasked with determining whether Encompass Health properly identified a specific flaw in the ALJ's decisions when it wrote: "[t]he beneficiary met the criteria for admission to the IRF. The ALJ's decision did not take into account all information provided in the record. We reserve the right to file a supplemental brief pursuant to § 405.1120." Admin. R. 1 at 5; Admin. R. 2 at 5.

Encompass Health argues that its "review requests do not run afoul of CMS's stated purpose for § 405.1112(b)." ECF No. 26 at 15. That is because all the disputed IRF services were billed as part of individual claims and the requests for review did not mention the ALJ's financial liability determinations. Id. Thus, Encompass Health's

---

[5] This is neither a draconian requirement nor the product of a rogue bureaucracy run wild. Rather, this requirement is analogous to the one imposed on parties who wish to object to the report and recommendation of a magistrate judge. See Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982) (explaining that de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in the magistrate judge's proposed findings). The rationale for that requirement applies in equal force here: to enable the Council to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute. See Dunlap v. TM Trucking of the Carolinas, 2017 WL 6345402, at *5 n.6 (D.S.C. Dec. 12, 2017) (citing One Parcel of Real Prop. Known as 2121 E. 30th St., 73 F.3d 1057, 1059 (10th Cir. 1996)).

identification of its disagreement with the ALJ's IRF beneficiary determinations implicitly excluded from review the ALJ's determinations as to other services not appealed or the financial liability determinations.  Id.  Encompass Health emphasizes that its review request clearly argued that the beneficiaries met the criteria for IRF admissions and that the ALJs failed to consider all relevant evidence in the administrative records. Id. at 16–17.  It argues that the fact that Form DAB-101 only had four lines meant that the agency implicitly accepted that a short basis for appeal devoid of factual and legal arguments is sufficient to preserve that issue for the Council's review.  Id. at 17.

In contrast, the Secretary argues that Encompass Health's request for appeal did not comply with the plain language of § 405.1112(b).  ECF No. 29 at 11.  The Secretary cites to the purpose and history of the regulation and argues that Encompass Health "failed to raise specific exceptions in its requests for review, and, consequently, the [Council] properly adopted the ALJ's decisions."  Id. at 12 (citing 67 Fed. Reg. 69312, 69335–36).  Secretary Becerra claims that Encompass Health's request for review "embodies those earlier examples reflected in the 2002 rule change, almost exactly" in that "[t]here is little difference between 'The decision is not supported by the evidence' and 'The ALJ's decision did not take into account all information provided in the record.'"  Id. at 13.  Secretary Becerra emphasizes that if a party believes the ALJ has not considered relevant evidence in the administrative record, it must direct the Council to the specific evidence that the ALJ failed to consider.  Id. at 14.  The formulaic language in each request for Council review "is precisely the kind of unclear language that section 405.1112(b) is meant to discourage as it fails to identify what parts of the ALJ's decisions [Encompass Health] disagreed with and why."  Id. at 15.

In response, Encompass Health reiterates its position that its "reference to the IRF admission criteria teed up for the Council the particular coverage guidelines in question: the patients' need for physician oversight of their rehabilitation programs along with intensive therapy services." ECF No. 30 at 5 (first citing Admin. R. 1 at 15–16; and then citing Admin. R. 2 at 21–22). The Secretary's argument purportedly misses the mark because it does not recognize the inherent limitation in Encompass Health's reference to the beneficiary eligibility to the IRF. See id. at 5–6.

Before delving into the merits of each party's arguments, the court finds it helpful to summarize the two ALJ decisions at issue. Admin. R. 1 at 12–16; Admin. R. 2 at 15–22. Both ALJs determined two issues: (1) whether there was Medicare coverage for the IRF services provided to the beneficiary; and (2) if not, who was responsible for the noncovered costs. Admin. R. 1 at 12; Admin. R. 2 at 16. The court begins by summarizing each ALJ decision, starting with C.B.'s appeal before turning to the appeal for J.M.

First, the ALJ determined that there was no Medicare coverage for the IRF services provided to C.B. and further concluded that Encompass Health was responsible for the noncovered costs. Admin. R. 1 at 16. C.B. was admitted to the IRF after an elective right total knee arthroplasty. Id. at 15. At admission, C.B.'s level of function varied from minimal assist to supervision and, at discharge, C.B.'s abilities ranged from modified independent to independent, such that admission to the IRF certainly helped C.B.'s recover from the surgery. Id. at 15–16. Nevertheless, the ALJ determined that C.B.'s health at admission did not support finding the IRF services to be reasonable or necessary because she had strength that was nearly normal and mobility was minimal

assist, except for the healing right knee.  Id.  The ALJ noted that the identified required services "are routinely treated at a lesser level of care, such as at a skilled nursing facility or through home health services," such that C.B. did not qualify for admission to the IRF. Id. at 16.  The ALJ thereafter found the provider responsible for the noncovered costs of the appeal, rather than C.B.  Id.

Second, the ALJ determined that there was no Medicare coverage for the IRF services provided to J.M. and further concluded that Encompass Health was responsible for the noncovered costs.  Admin. R. 2 at 22.  J.M. was admitted to the IRF after an elective right total knee arthroplasty.  Id. at 19.  The IRF admission certainly helped J.M.: she entered only able to walk fifty feet with a rolling walker with additional functional limitations and left the IRF one week later able to walk 300 feet with a rolling walker and without most of the initial functional limitations.  Id. at 21.  Nevertheless, the ALJ determined that J.M.'s medical management did not require close physician oversight, supervision, and/or management that is provided in an IRF setting—in other words, given J.M.'s high functional status level at admission, intensive rehabilitation was not medically required.  Id.  The ALJ concluded that the IRF services provided to J.M. were not medically reasonable and necessary and therefore not covered by Medicare.  Id. at 22. Finally, the ALJ determined that Encompass Health—not J.M.—was liable for the non-covered services.  Id.

The court begins with the question of whether each appeal meets the requirements of the regulation.  In each ALJ decision, most of the decision concerns the beneficiary's eligibility for IRF services.  Admin. R. 1 at 12–16; Admin. R. 2 at 15–22.  Each ALJ identifies reasons why the beneficiary's admission to the IRF was not medically

reasonable and necessary such that the costs of providing that care were not reimbursable by Medicare.  Admin. R. 1 at 12–16; Admin. R. 2 at 15–22.  For each ALJ decision, the ALJ devoted only one to two paragraphs to the question of financial responsibility, with the remainder of the decision explaining the ALJ's determination of IRF eligibility.  Admin. R. 1 at 12–16; Admin. R. 2 at 15–22.  Given that context, the court finds that Encompass Health's stated reason for appeal is comparable to the examples of insufficient appeals which prompted the change in law.  See 67 Fed. Reg. 69312, 69335–36.  In other words, the basis of appeal being "[t]he beneficiary met the criteria for admission to the IRF.  The ALJ's decision did not take into account all information provided in the record," Admin. R. 1 at 5; Admin. R. 2 at 5, is no different from the examples of "I disagree with the ALJ's decision" or "The decision is not supported by the evidence and is inconsistent with the law," 67 Fed. Reg. 69312, 69335–36—especially where the beneficiary eligibility question comprises the majority of the decision.

The parties thereafter raise additional arguments related to the APA's arbitrary and capricious standard as it relates to the Council's purportedly uneven application of the regulation's minimum standard for appeals to prompt de novo review.[6]  In the interest

---

[6] The Secretary argues that Encompass Health has fundamentally changed its arguments and claims without filing an amended complaint.  ECF No. 29 at 10.  The complaint details the parties, the basis for jurisdiction, information about Encompass Health's medical services, the methodology for Medicare coverage of inpatient rehabilitation services, the Medicare administrative appeals process, and the current backlog of that process.  Compl. ¶¶ 1–31.  Encompass Health thereafter presents the procedural history and stipulates that its appeals to the Council complied with all applicable rules governing content and timeliness and further details that the IRF services in question were medically reasonable and necessary.  Id. ¶¶ 32–37.  Encompass Health brings two counts: (1) the Secretary's final decisions are not supported by substantial evidence because a reasonable mind would not accept the evidence in the administrative record to be sufficient to support the Council's determinations; and (2) the Council failed to apply the correct legal standard governing administrative claim appeal procedures

of completeness, the court addresses those arguments to supplement its conclusion reached through all the standard tools of interpretation. Each party identifies various Council decisions that purportedly show Encompass Health was treated differently from other similarly situated appellants. Compare In re All Care Home Health, 2013 WL 7872031, at *1 (H.H.S. Apr. 16, 2013); In re Jefferson Surgical Clinic, Inc., 2012 WL 4760802, at *2 n.3 (H.H.S. Sept. 4, 2012); with In re Covenant Visiting Nursing Ass'n, 2010 WL 7342840, at *2 (H.H.S. Dec. 8, 2010); In re Gardens of St. Henry, 2011 WL 7102515, at *2 (H.H.S. Sept. 15, 2011). Encompass Health argues that an unexplained inconsistency in agency policy—like the Council's review of the identified appeals but its adoption without comment of Encompass Health's appeals—indicates that the agency's action is arbitrary and capricious, and therefore unlawful. ECF No. 30 at 9–10 (citing Jimenez-Cedillo v. Sessions, 885 F.3d 292, 298 (4th Cir. 2018)).

The court finds that there is no unexplained inconsistency in agency policy such that the Council's adoption of the ALJ decisions without comment was not arbitrary and capricious. For example, in Covenant Visiting Nursing Association, the Council adopted the ALJ decision upon concluding that the appellant failed to raise a specific contention in the request for review when it merely stated "Medicare hospice guidelines were reviewed at the time in question. [The beneficiary] met guidelines for hospice case per Dr. Jackson & IDT Team." 2010 WL 7342840, at *2. Similarly, in Gardens of St.

---

and/or Medicare coverage of IRF services. Id. ¶¶ 38–50. The complaint does not reference the APA, nor does it allege that Encompass Health was treated differently from other appellants in the Medicare claims appeal process. See generally id. ¶¶ 1–50. Nevertheless, Encompass Health argues that "any reasonable person could draw a proverbial straight line form the contents of the [c]omplaint to Encompass Health's argument." ECF No. 30 at 3.

Henry, the Council adopted the ALJ decision upon concluding that the appellant failed to raise a specific contention or point to any legal or evidentiary error in the ALJ decision in its request for review when it contended that the therapy services provided were "reasonable and necessary for the promotion of the patient's prior level of function, and to complete her activities of daily living to the best of her ability." 2011 WL 7102515, at *2. Conversely, in All Care Home Health, the Council noted that the appellant stated the same generic basis for disagreement with the ALJ's decision in each appealed case by stating, "The facts of the case and the written brief were not given proper consideration in the decision making process. These charts concerning the same patients who have been paid different times by different judges. For them now not to be paid makes no sense." 2013 WL 7872031, at *1. Importantly, that appellant identified a specific interpretative error by the ALJ: namely, the inconsistent interpretation of charts for specific patients. Id. Analogously to All Care Home Health, in Jefferson Surgical Clinic, the Council performed de novo review of the ALJ decision appeal after the appellant stated "Worst telephone hearing that I have ever participated in. Please listen to the tape. ALJ was confused and rambling. Please reconsider." 2012 WL 4760802, at *2. That appellant also directed the Council to a specific aspect of the record to review in its appeal. Id. Rather than showing an unexplained inconsistency, the four decisions identified by the parties indicate that an appellant must identify a specific flaw in the ALJ's reasoning.

The court has identified additional cases which buoy its interpretation that an appellant must identify and explain a specific error in the ALJ's decision. See, e.g., In re Vital Remedies, Inc., 2011 WL 6960459, at *3 (H.H.S. June 22, 2011) (finding that the appellant failed to raise any specific contention or identify any factual or legal error in the

ALJ decision when it stated "[appellant] disagrees with the decision because after receiving original prescription along with lumbar tech detailed prescription, which states why the patient is in need of the lumbar support along with progress note which states patient's condition and diagnosis."); In re Covenant VNA Hospice, 2011 WL 6901379, at *2 (H.H.S. Apr. 18, 2011) (finding no specific exception when appellant merely stated that "Supporting documentation sent by Referring Doctor supported the Dx[.]  Hospice Guidelines were used and the Pt met criteria."); In re Vitas Healthcare Corp., 2011 WL 7145295, at *4 (H.H.S. Sept. 28, 2011) (finding no specific exception to the ALJ decision but construing appellant's listing of the beneficiary's diagnoses and health measurements as an argument advocating for Medicare coverage based upon the data submitted); In re Mercy Med. Supply, LLC, 2013 WL 7135001, at *2 (H.H.S. Jan. 9, 2013) (finding no specific exception when appellant submitted Form DAB-101 with statement of reasons section left blank).  In sum, while a lengthy legal brief is not required, the appellant is required to identify a specific error in the ALJ's decision and briefly indicate why that conclusion is erroneous.  See 42 C.F.R. § 405.1112(b).

The court finds that the Council did not err when it found that Encompass Health did not file any specific exceptions, which prompted the adoption of the ALJ decisions without further comment.  See 67 Fed. Reg. 69312, 69335–36; 42 C.F.R. § 405.1112(b).  Thus, the court concludes that the Council, acting on behalf of the Secretary, applied the correct legal standard to its review of Encompass Health's appeal of the ALJ decisions.  See Admin. R. 1 at 3–4; Admin. R. 2 at 3–4.  In sum, the Council properly applied the applicable regulations to Encompass Health's petition for Council review when it found that Encompass Health's request for review failed to comply with those regulatory

24

requirements, prompting the Council to appropriately adopt the ALJ's findings without further comment.  <u>See</u> 42 C.F.R. § 405.1112(b).  "[J]udges are not like pigs, hunting for truffles buried in briefs."  <u>Teague v. Bakker</u>, 35 F.3d 978, 985 n.5 (4th Cir. 1994) (citing <u>United States v. Dunkel</u>, 9278 F.2d 955, 956 (7th Cir. 1991)).  The regulations governing Medicare appeals similarly indicate that the Council is not like a pig, hunting for truffles buried in the administrative record.  <u>See</u> <u>id.</u>; 42 C.F.R. § 405.1112(b).

### B.  Substantial Evidence

The court is also tasked with determining whether the Council's decisions were supported by substantial evidence.  Initially, the court notes that it is not reviewing the ALJ decisions; it is only reviewing the Council decisions, which are the agency decisions on direct review.  <u>See</u> <u>Int'l Rehab. Scis. Inc. v. Sebelius</u>, 688 F.3d 994, 1002 (9th Cir. 2012); <u>John Balko & Assocs., Inc. v. Sec'y U.S. Dep't of Health & Hum. Servs.</u>, 555 F. App'x 188, 194 (3d Cir. 2014); <u>see also</u> <u>New LifeCare Hosps. of N.C. LLC v. Azar</u>, 466 F. Supp. 3d 124, 140 (D.D.C. 2020) ("The Court may only review a final agency action—here, the Administrator's decision . . .So acting as an appellate court reviewing that final action the Court may not review what the Administrator did not.").  The court previously summarized each ALJ's decision as to the beneficiary's eligibility to the IRF and, bearing those analyses in mind, the court finds that the Council's adoption of the ALJs' conclusions is supported by the low bar of substantial evidence.  <u>See</u> <u>Pierce</u>, 487 U.S. at 565; <u>see also</u> Admin. R. 1 at 12–16; Admin. R. 2 at 15–22.  For many of the same reasons set forth in its analysis of the legal standards, upon finding that the Council applied the correct standard, the court also finds that its conclusion was supported by substantial evidence.

## IV.   CONCLUSION

For the reasons set forth above, the court **DENIES** Encompass Health's motion for summary judgment and **GRANTS** Secretary Becerra's motion for summary judgment.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 15, 2024**
**Charleston, South Carolina**

26